IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

MERRILEE A. CATT,

                Plaintiff,                        Case No. 3:12-cv-02087-HZ

        v.                                    OPINION & ORDER

CAROLYN W. COLVIN,
Commissioner, Social Security
Administration,

                        Defendant.
_____

SARA L. GABIN
Sara L. Gabin, P.C.
14523 Westlake Drive
Lake Oswego, Oregon 97035
        Attorney for plaintiff

S. AMANDA MARSHALL
United States Attorney
District of Oregon
ADRIAN L. BROWN
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, Oregon 97201

KATHRYN ANN MILLER
Office of General Counsel
Social Security Administration
701 Fifth Avenue, Suite 2900 M/S 901
Seattle, Washington 98104
        Attorneys for defendant

1 – OPINION & ORDER

HERNANDEZ, District Judge:

Plaintiff Merrilee Catt brings this action for judicial review of the Commissioner's decision denying her application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act (the "Act"). This Court has jurisdiction under 42 U.S.C. § 405(g). For the following reasons, the Commissioner's decision is AFFIRMED.

BACKGROUND

Ms. Catt was born on December 24, 1973. Tr. 42, 140. She graduated from high school and completed one year of college. Tr. 42, 174. Ms. Catt was employed previously as a medical transcriptionist and word processor, but stopped working on July 1, 2008. Tr. 57, 170-71.

On March 3, 2009, Ms. Catt protectively filed an application for DIB, alleging disability as of January 1, 2008 due primarily to fibromyalgia. Tr. 43, 140-43, 170. After the application was denied initially and upon reconsideration, Ms. Catt requested a hearing before an administrative law judge ("ALJ"). Tr. 81-90. On June 9, 2011, a hearing was held before ALJ Richard Say, at which Ms. Catt testified and was represented by counsel; a vocational expert ("VE") also testified. Tr. 39-66. On July 21, 2011, the ALJ issued a decision finding Ms. Catt not disabled within the meaning of the Act. Tr. 22-33. After the Appeals Council denied review of the ALJ's decision, Ms. Catt filed a complaint in this Court. Tr. 1-5.

SEQUENTIAL DISABILITY ANALYSIS

The Commissioner engages in a sequential process encompassing between one and five steps in determining disability under the meaning of the Act.   20 C.F.R. § 404.1520; Bowen v. Yuckert, 482 U.S. 137, 140 (1987).   Each step is potentially dispositive.   Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999).   The initial burden of establishing disability rests upon the claimant. Id.; Yuckert, 482 U.S. at 146 n.5.   If the sequential disability analysis reaches the fifth

step, the burden shifts to the Commissioner to show that "the claimant can perform some other work that exists in the national economy, taking into consideration the claimant's residual functional capacity, age, education, and work experience." Tackett, 180 F.3d. at 1100.

At step one, the Commissioner determines if the claimant is performing substantial gainful activity. If she is, the claimant is not disabled. 20 C.F.R. § 404.1520(a)(4)(i). At step two, the Commissioner determines if the claimant has "a severe medically determinable physical or mental impairment" that meets the twelve-month durational requirement. If the claimant does not have such a severe impairment, she is not disabled. 20 C.F.R. § 404.1520(a)(4)(ii).

At step three, the Commissioner determines whether the severe impairment meets or equals a "listed" impairment in the regulations. If the impairment is determined to equal a listed impairment, the claimant is presumptively disabled. 20 C.F.R. § 404.1520(a)(4)(iii).

At step four, the Commissioner determines whether the claimant can still perform "past relevant work." If the claimant can perform such work, she is not disabled. 20 C.F.R. § 404.1520(a)(4)(iv); Yuckert, 482 U.S. at 141. At step five, the burden shifts to the Commissioner to show that the claimant can perform other work existing in the national economy; if the Commissioner cannot meet this burden, the claimant is disabled. 20 C.F.R. § 404.1520(a)(4)(v), (f); Tackett, 180 F.3d at 1099. Conversely, if the Commissioner meets this burden, the claimant is not disabled. 20 C.F.R. § 404.1520(g); Tackett, 180 F.3d at 1099.

## THE ALJ'S DECISION

At step one of the sequential analysis outlined above, the ALJ found that Ms. Catt had not engaged in substantial gainful activity since the alleged onset date. Tr. 24. At step two, the ALJ determined that Ms. Catt had the following severe impairments: fibromyalgia, hip bursitis, depression, and a somatoform disorder. Id. At step three, the ALJ found that Ms. Catt's

impairments, either singly or in combination, did not meet or equal the requirements of a listing. Tr. 25.

Because Ms. Catt did not establish presumptive disability at step three, the ALJ continued to evaluate how her medical impairments affected her ability to work. The ALJ resolved that Ms. Catt had the residual functional capacity ("RFC") to perform light work, as defined in 20 C.F.R. § 404.1567(b), but with the following limitations:

> She can occasionally climb ramps and stairs, stoop, kneel, crouch, and crawl. She should never climb ladders, ropes, or scaffolds. She can frequently balance. She should avoid even moderate exposure to workplace hazards. She can perform unskilled work that involves no interaction with the public and only superficial interaction with coworkers. She cannot perform work that requires close cooperation and coordination.

Tr. 26.

At step four, the ALJ found that Ms. Catt was unable to perform her past relevant work. Tr. 32. At step five, the ALJ determined that, considering her age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national and local economy that Ms. Catt can perform, such as office helper or electronics worker. Tr. 33. Accordingly, the ALJ concluded that Ms. Catt was not be disabled under the Act. Id.

## STANDARD OF REVIEW

The reviewing court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); Bray v. Comm'r of the Soc. Sec. Admin., 554 F.3d 1219, 1222 (9th Cir. 2009). Substantial evidence is "more than a mere scintilla, but less than a preponderance." Bray, 554 F.3d at 1222 (citation and internal quotations omitted). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id. The court must weigh the evidence that supports and detracts from the Commissioner's conclusions. Lingenfelter v.

<u>Astrue</u>, 504 F.3d 1028, 1035 (9th Cir. 2007) (citation omitted).  Where the evidence can support either a grant or a denial, the court may not substitute its judgment for that of the Commissioner.  <u>Id.</u> (citation omitted).   Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading.  <u>Burch v. Barnhart</u>, 400 F.3d 676, 679 (9th Cir. 2005).  However, the court cannot affirm the Commissioner's decision upon reasoning the ALJ did not assert in denying the claimant benefits.  <u>Bray</u>, 554 F.3d at 1225–26 (citation omitted).

**DISCUSSION**

Ms. Catt argues that the ALJ erred by: (1) finding her not credible; (2) improperly assessing the medical opinion evidence from Jeffrey Tyler, M.D.; Peggy Wright, rehabilitation consultant; and Ryan Glover, occupational therapist; and (3) failing to accommodate the full range of her limitations in the RFC, thereby rendering the hypothetical questions posed to the VE invalid.

## I.    The ALJ's Credibility Finding

Ms. Catt asserts that the ALJ neglected to provide a clear and convincing reason, supported by substantial evidence, for rejecting her subjective symptom testimony regarding the severity and extent of her impairments.   When a claimant has medically documented impairments that could reasonably be expected to produce some degree of the symptoms complained of, and the record contains no affirmative evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of . . . symptoms only by offering specific, clear and convincing reasons for doing so."  <u>Smolen v. Chater</u>, 80 F.3d 1273, 1281 (9th Cir. 1996) (citation omitted).  A general assertion that the claimant is not credible is insufficient; the ALJ must "state which . . . testimony is not credible and what evidence suggests the complaints are not credible."  <u>Dodrill v. Shalala</u>, 12 F.3d 915, 918 (9th Cir. 1993).  The reasons proffered

must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." Orteza v. Shalala, 50 F.3d 748, 750 (9th Cir. 1995) (citation omitted). If, however, the "ALJ's credibility finding is supported by substantial evidence in the record, [the court] may not engage in second-guessing." Thomas v. Barnhart, 278 F.3d 947, 959 (9th Cir. 2002) (citation omitted).

At the hearing, Ms. Catt testified that she was disabled due to fibromyalgia, as well as feelings of depression and anxiety. Tr. 42-56. She stated that she lives with her husband and two children, ages nine and eleven. Tr. 43. As for as daily activities, Ms. Catt explained she gets her children ready and takes them to school, and picks them up in the afternoon, between 2:30 and 3:00pm. Tr. 45-47. She often naps in the morning after tending to her children and, around noon, gets up to shower, dress, and apply make-up, which can take up to an hour; she then does "whatever is the most pressing thing in the house to do[,] [such as] [c]hang[ing] the cat litter or do[ing] the dishes." Tr. 46-53. Although her "husband is gone during the week quite a bit," Ms. Catt reported he does the grocery shopping, while she does performs limited cooking, cleaning, and laundry. Tr. 43-48. Her eleven-year-old daughter does the vacuuming and other "little things." Tr. 54. She testified that she can stand for approximately 25 minutes before needing to rest and walk a maximum distance of "probably about eight blocks." Tr. 46, 50-51.

After summarizing her hearing testimony, the ALJ found that Ms. Catt's medically determinable impairments could reasonably be expected to produce some degree of symptoms, but that her "statements concerning intensity, persistence, and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above [RFC] assessment." Tr. 27. In support of this finding, the ALJ reasoned that Ms. Catt's non-compliance with prescribed treatments, including her drug-seeking behavior, and activities of daily living, as well as the lack of corroborating medical evidence, undermined her subjective symptom testimony. Tr. 27-30.

6 - OPINION & ORDER

Notably, the ALJ determined that plaintiff's credibility was impaired by her "systematic non-compliance and lack of follow through with prescribed treatment plans." Tr. 28. Failure to seek or follow up on medical treatment is a clear and convincing reason to reject a claimant's subjective statements. Burch, 400 F.3d at 681; Fair v. Bowen, 855 F.2d 597, 603-04 (9th Cir. 1989); see also SSR 96-7p, available at 1996 WL 374186. Nevertheless, before drawing a negative inference from a claimant's failure to seek or follow up on a prescribed treatment, the ALJ must consider "any explanations that the individual may provide, or other information in the case record, that may explain infrequent or irregular medical visits." SSR 96-7p, available at 1996 WL 374186.

In this case, substantial evidence supports the ALJ's conclusion. In April 2008, Ms. Catt was referred to Joseph Hadeed, Ph.D., for mental health counseling by her primary care physician, Alfred Mick, M.D. Tr. 270, 297-98. After less than a month of mental health treatment, Ms. Catt began cancelling her sessions with Dr. Hadeed; she ultimately refused to return to counseling altogether, despite Dr. Hadeed's opinion that she was "certainly in need of ongoing psychological care," as well as a "complete comprehensive psychological evaluation." Tr. 266-67, 293. Ms. Catt admits that she has been aware of her alleged psychological impairments for over a decade and yet, with the exception of Dr. Hadeed's chart notes, there is no evidence in the 606 page record reflecting any longitudinal mental health treatment.[1] See,

---

[1] While Ms. Catt neither cites to nor discusses this evidence, the record contains passing references to prior mental health services. See generally Pl.'s Opening Br.; Pl.'s Reply Br. For instance, in 2009, during a one-time physical examination performed by Amy Cowan, M.D., Ms. Catt reported "see[ing] a psychologist for about six months several years ago." Tr. 367. Additionally, medical records from 2010 reflect that Ms. Catt reinitiated mental health counseling at the recommendation her doctor, Gregory Gullo, M.D. Tr. 523-28. Ms. Catt, however, did not include this evidence in the record or otherwise submit any such documentation to the Appeals Council pursuant to her request for review. See Tr. 5. Accordingly, the only medical evidence before the Court pertaining to Ms. Catt's psychological impairments are Dr. Hadeed's chart notes, the one-time Psychodiagnostic Evaluation performed by Kim Goodale,

7 - OPINION & ORDER

<u>e.g.</u>, Tr. 55 (Ms. Catt testifying that she has experienced depression "since [she] was a teenager"); <u>see also</u> Tr. 270.

Although Ms. Catt contends that "she has been unable to afford mental health care," the evidence is to the contrary.  Pl.'s Reply Br. 5 (citing Tr. 534, 536, 538).  The record contains voluminous and continuous treatment notes throughout the relevant time period for Ms. Catt's physical impairments, reflecting that she had no problem obtaining services when she wanted or believed she needed them.  <u>See, e.g.</u>, Tr. 273-300 (Dr. Mick's chart notes from 2008 reflecting that Ms. Catt was seen at least every month for medication management and/or refills); <u>see also</u> Tr. 330-48, 392-400, 424-27,466-93, 556-63.   Further, several doctors recommended psychological counseling to her during 2008 and 2009, but it was not until 2010 that Ms. Catt first posited that she lacked sufficient resources to obtain mental health services.  <u>Compare</u> Tr. 297-98 (April 2008 mental health referral from Dr. Mick), 346 (October 2008 mental health referral from Yale Liang, M.D.), 343 (November 2008 mental health referral from Dr. Liang), 426-27 (June 2009 mental health referral from Dr. Liang), <u>and</u> 523 (January 2010 mental health referral from Dr. Gullo), <u>with</u> Tr. 532 (June 2010 chart note from Dr. Gullo reflecting, for the first time, that Ms. Catt "has been unable to move forward with recommended psychological counseling due to resources").   Thus, as the ALJ concluded, Ms. Catt's failure to seek psychological treatment belies her statements that depression and anxiety render her unable to work.  <u>See e.g.</u>, <u>Epperson-Nordland v. Colvin</u>, 2013 WL 5774110, *5-6 (D.Or. Oct. 22, 2013) (affirming the ALJ's credibility finding under analogous circumstances); <u>see also</u> <u>Molina v. Astrue</u>, 674 F.3d 1104, 1113-14 (9th Cir. 2012).

---

Psy.D., and the opinions of the State Agency consulting sources.  Tr. 266-71, 359-65, 371-83, 405-21.

Even assuming, however, that the ALJ impermissibly relied on Ms. Catt's failure to seek mental health treatment, he nonetheless identified several other instances of her medical non-compliance.  Tr. 28-29.  For example, "Dr. Gullo's treatment notes contain various reports that [Ms. Catt] had not been focusing on the daily stretching and exercise regime that he suggested." Tr. 29; <u>see also</u> Tr. 480, 486, 492, 532, 538, 541 (chart notes from Dr. Gullo and Oleg Maksimov, M.D., referring Ms. Catt to different modalities of treatment, including stretches and exercises, which she repeatedly elected not to pursue). [2]

The record also contains a plethora of evidence demonstrating Ms. Catt's non-compliance with her doctors' orders via a "repeated pattern of drug-seeking behavior."  Tr. 28.  In fact, Ms. Catt was discharged from several providers' care for overtaking her narcotic and opiate medications.  <u>See, e.g.</u>, Tr. 273-74 (September 2008 chart note from Dr. Mick indicating that Ms. Catt's "requests for hydrocodone kee[p] increasing" and refusing to provide further care because "the only reason she comes here is for narcotic refills . . . she never comes in for disease management"), 457 (August 2009 letter from Dr. Maksimov stating that Ms. Catt "has been discharged from our clinic for [pain medication] non-compliance"), 424-25 (October 2009 chart note from Dr. Liang reflecting that Ms. Catt was requesting "7 tablets of Methadone" because she "[ran] out early [from] tak[ing] more meds without realizing it"; after Dr. Liang declined that request, Ms. Catt "got up and left without another word"), 561 (February 2011 chart note from Jeffrey Tyler, M.D., reporting that Ms. Catt "was discharged from Dr. Gregory Gullo's office for

---

[2] Ms. Catt does not address the aforementioned aspects of the ALJ's decision in her briefs.  <u>See</u> Pl.'s Opening Br. 16-17 (arguing only that, "[b]efore finding a claimant not credible for treatment non-compliance, an ALJ must show compliance is clearly expected to restore the capacity for gainful work") (citing SSR 82-59, <u>available at</u> 1982 WL 31384, which is inapplicable here); Pl.'s Reply Br. 3-5; <u>see also</u> <u>Carmickle v. Comm'r, Soc. Sec. Admin.</u>, 533 F.3d 1155, 1161 n.2 (9th Cir. 2008) (the court "ordinarily will not consider matters on appeal that are not specifically and distinctly argued in an appellant's opening brief") (citation and internal quotations omitted).

noncompliance with pain medication [and a] urine specimen apparently showed the presence of alcohol").  Additionally, Ms. Catt became confrontational with one provider after he declined to prescribe more pain medication and, furthermore, may have engaged in doctor-shopping to maximize her access to narcotics and opiates.  See, e.g., 337 (Ms. Catt remarking to Dr. Liang that she "is not happy with current pain specialist, citing monthly visit and 2 hour visit time, along with his unwillingness to prescribe both Norco and Methadone"), 361 (Ms. Catt reporting to Dr. Goodale that she was refusing to return to Dr. Liang "because [he] withheld my medications because I was out of meds one day early"), 458-60 (after Dr. Maksimov refused to prescribe additional pain medications, Ms. Catt "replied in an elevated tone . . . 'I will go to Dr. Liang and get my pain medication'"; when she was informed that "she shouldn't seek opiates from outside providers, she report[ed] that we are not the only pain clinic and hung up").

Moreover, the ALJ resolved that Ms. Catt was not credible because "the objective record shows that [her] physical impairments, while limiting, are not disabling."  Tr. 27.  Central to this determination was the fact that Ms. Catt's "treatment has consisted almost exclusively of various medication regimes consisting of antidepressants and narcotic and opioid pain medications," which provided periods of good control.  Id.  "[E]vidence of conservative treatment is sufficient to discount a claimant's testimony regarding severity of an impairment."  Parra v. Astrue, 481 F.3d 742, 751 (9th Cir. 2007), cert. denied, 552 U.S. 1141 (2008) (citations and internal quotations omitted).

The ALJ is correct; as discussed above, outside of prescription medications, Ms. Catt repeatedly declined other modalities of treatment.  Furthermore, the evidence of record reflects that, on numerous occasions, Ms. Catt reported "with the narcotics she can 'function like a normal mom.'"  Tr. 313; see also Tr. 393 (Ms. Catt stating that "[t]he pain is well-controlled on oral meds and physical measures"), 398 ("[s]he is satisfied with meds [because they] are

providing reasonable analgesia"), 452 ("Ms. Catt is getting 90% relief with current treatments"), 522 ("[s]he does admit that meds do help with her fibromyalgia pain [and] denied adverse effects'), 536 (Ms. Catt's pain "averaging 3/10 with the use of meds"). The Court acknowledges the cyclical nature of fibromyalgia and that Ms. Catt's symptoms associated therewith can be variable. See SSR 12-2p, available at 2012 WL 3104869 ("the symptoms and signs of FM may vary in severity over time and may even be absent on some days"). Regardless, while this evidence could be interpreted more favorably to Ms. Catt, the ALJ's reading is nonetheless reasonable and therefore must be upheld. See Batson v. Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1198 (9th Cir. 2004) (court must uphold an ALJ's rational interpretation of the evidence); see also Burch, 400 F.3d at 679-81 ("[a]lthough lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ can consider in his credibility analysis") (citation omitted).

The foregoing discussion reveals that the ALJ provided clear and convincing reasons, supported by substantial evidence, for rejecting Ms. Catt's subjective symptom statements. As such, this Court need not discuss all of the reasons provided by the ALJ because at least one legally sufficient reason exists. Carmickle, 533 F.3d at 1162-63. The ALJ's credibility finding is affirmed.

## II.    The ALJ's Evaluation of the Opinion Evidence

Ms. Catt next argues that the ALJ impermissibly rejected the opinions of Mr. Glover, Ms. Wright, and Dr. Tyler.[3]

---

[3] Although Ms. Catt did not identify it as one of the dispositive "legal issues before the Court," she does devote one sentence to the lay statements of her husband and mother, and how the ALJ improperly assessed them. See Pl.'s Opening Br. 12, 20. However, she neglected to explain how the alleged error was prejudicial and, furthermore, her reply brief is silent as to this issue. Id. at 20; see generally Pl.'s Reply Br. Accordingly, Ms. Catt failed to carry her burden. See Carmickle, 533 F.3d at 1161 n.2; see also McLeod v. Astrue, 640 F.3d 881, 887-88 (9th Cir.

11 - OPINION & ORDER

## A.      Other Source Evidence

While only "acceptable medical sources" can diagnose and establish that a medical impairment exists, evidence from "other sources" can be used to determine the severity of that impairment and how it affects the claimant's ability to work.  20 C.F.R. § 404.1513(a), (d). "Other sources" include, but are not limited to, therapists and rehabilitation counselors.  20 C.F.R. § 404.1513(d); SSR 06-03p, available at 2006 WL 2329939.  To disregard the opinion of an other, or lay, source, the ALJ need only provide a reason that is "arguably germane" to that witness.  Lewis v. Apfel, 236 F.3d 503, 512 (9th Cir. 2001); Turner v. Comm'r of Soc. Sec., 613 F.3d 1217, 1223-24 (9th Cir. 2010).  Further, in rejecting such statements, the ALJ need not "discuss every witness's testimony on an individualized, witness-by-witness basis . . . if the ALJ gives germane reasons for rejecting testimony by one witness, the ALJ need only point to those reasons when rejecting similar testimony by a different witness."  Molina, 674 F.3d at 1114 (citations omitted).

### i.      Mr. Glover's Assessment

In May 2011, Ms. Catt attended a one-time functional capacity evaluation with Mr. Glover.  Tr. 598-606.  The examination consisted of a number of physical tasks; however, neither the tasks themselves nor Ms. Catt's results are explained within the report.  Id. Nonetheless, Mr. Glover opined that Ms. Catt was capable of: lifting and carrying 20 pounds "from floor to waist"; lifting five pounds from "shoulder to overhead"; sitting for 30 minutes at a time and for a total of four hours in an eight hour workday; standing for 15 minutes at one time and for a total of two hours in an eight hour workday; occasionally stooping, bending, twisting, climbing, kneeling, squatting, crouching, crawling, overhead reaching, pulling, lifting, and

2011) (as amended) ("[w]here harmfulness of the error is not apparent from the circumstances, the party seeking reversal must explain how the error caused harm").  In any event, the Court finds that the ALJ did not commit harmful error in evaluating this lay testimony.

carrying; frequently reaching horizontally and pushing; and constantly grasping, fingering, seeing, hearing, and engaging in fine manipulation. Tr. 604. Mr. Glover also indicated that Ms. Catt "required [a] rest break after 3 minutes of medium pace . . .walking, stairs or standing." Tr. 603, 605.

The ALJ gave partial weight to Mr. Glover's findings and, accordingly, several of the restrictions identified by Mr. Glover are reflected in the RFC. Compare Tr. 26, with Tr. 598-606; see also Tr. 31 (ALJ denoting that the RFC "contains elements of [Mr. Glover's] assessment"). To the extent that the ALJ rejected Mr. Glover's assessment, he provided three reasons. First, the ALJ determined that Mr. Glover's evaluation was not probative concerning Ms. Catt's capacity for sustained walking for the purposes of the RFC because it "contain[ed] no assessment regarding [her] ability to walk during an eight-hour period." Tr. 31. Second, the ALJ noted that Mr. Glover is not "an acceptable medical source." Id. Third, the ALJ found that Mr. Glover's report was contravened by the overall evidence of record. Id. Inconsistency with the medical record is a germane reason to reject the opinion of a lay source. Lewis, 236 F3d at 511 (citation omitted).

The record supports the ALJ's finding in the case at bar. Mr. Glover's evaluation is silent as to Ms. Catt's ability to walk throughout an eight-hour workday; the ALJ therefore could not and did not rely on this report to prescribe a functional limitation associated therewith. See Tr. 598-606. Moreover, the record as a whole, including Ms. Catt's own statements, reveals that she is less restricted than Mr. Glover's evaluation indicates. While Mr. Glover stated that she can only stand for stand for 15 minutes and walk for three minutes at a time, Ms. Catt testified that she can stand for 25 minutes and walk for four blocks, and, after a brief rest, resume walking for another four blocks. Tr. 46, 50-51. In addition, while Mr. Glover reported that Ms. Catt could sit for 30 minutes before needing to change position, Dr. Goodale observed that "[s]he was able

13 - OPINION & ORDER

to remain seated during the full 60 minute interview with minimal shifting." Tr. 363. Dr. Cowan, who examined Ms. Catt in August 2009, found no physical abnormalities and therefore determined that "[t]he number of hours [Ms. Catt] could be expected to [sit,] stand and walk is without limitation." Tr. 366-370. Similarly, the reviewing State Agency source opined that Ms. Catt could stand, walk, or sit for a total of six hours in an eight hour workday. Tr. 498; see also Tr. 385.[4] The ALJ afforded partial weight to Dr. Cowan's and the reviewing State Agency source's opinions, and Ms. Catt does not now challenge those findings.

In sum, while the ALJ incorporated most of the restrictions identified by Mr. Glover into the RFC, the ALJ rejected his report concerning Ms. Catt's ability to stand, sit, and walk because it was incomplete or inconsistent with the "longitudinal record." Tr. 31. As such, the ALJ did not err as to this issue.

### ii.    Ms. Wright's Assessment

In January 2011, Ms. Catt participated in a "vocational evaluation" with Ms. Wright. Tr. 243-52. The evaluation took place over a four day period and, during that time, Ms. Catt engaged in a number of exercises, including "commercial tests, work samples, achievement tests, simulated work activities and 'real' work tasks," that were geared towards appraising her ability to function in the workplace. Tr. 243. Overall, Ms. Catt performed well on the academic portion of the evaluation, but was unable to complete tests that required the completion of certain physical tasks, such as repetitive reaching or bending. Tr. 243-48. She also demonstrated a slower rate of speed with regard to fine and gross dexterity. See, e.g., 249, 251. Ms. Wright assessed Ms. Catt with the ability to: sit and stand occasionally throughout a four hour workday;

---

[4] As discussed in greater detail below, Ms. Catt did not obtain any opinion evidence from a medically-acceptable treating source. The evidence summarized above therefore reflects the entirety of the opinion evidence concerning Ms. Catt's physical abilities, all of which the ALJ addressed in his opinion. See Tr. 29-31.

perform repetitive simple and firm grasping, as well as fine manipulation, with both hands; and use her head and neck in the static position.  Tr. 250.  Ms. Wright also opined that Ms. Catt's communication, interpersonal, executive functioning, and self-care skills were satisfactory.  Tr. 251-52.  However, Ms. Wright found that Ms. Catt was unable to reach overhead and, further, could not frequently flex her head and neck.  Tr. 250.  Ultimately, Ms. Wright concluded that Ms. Catt's "level of physical discomfort and reduced energy level . . . are genuine and severe enough to prevent her from being competitively employable."  Tr. 252.

The ALJ did not discuss Ms. Wright's report in his opinion.  Tr. 22-33.  Nevertheless, the Court finds, to the extent the ALJ implicitly rejected Ms. Wright's evaluation, such an error was harmless.  See Molina, 674 F.3d at 1118-19 (ALJ's failure to comment upon lay witness testimony is harmless where "the testimony is similar to other testimony that the ALJ validly discounted, or where the testimony is contradicted by more reliable medical evidence that the ALJ credited").

As a preliminary matter, the Court notes that, accordingly to Ms. Wright's report, Ms. Catt is adequately capable in many areas that are directly transferrable to a work setting.  In any event, like Mr. Glover, Ms. Wright did not assess several functional abilities that are relevant to the RFC, including Ms. Catt's capacity for bending, lifting, carrying, standing, sitting, and walking throughout an eight hour period.  See, e.g., Tr. 250 (discussing only Ms. Catt's ability to sit, stand, and overhead reach during a four hour period).  Further, for the same reasons discussed above, Ms. Glover's report is inconsistent with the other evidence of record.  Indeed, some of the restrictions assessed by Ms. Wright even conflict with aspects of Mr. Glover's report.  Compare Tr. 249, 252 (Ms. Wright stating that Ms. Catt's "fine and gross motor dexterity test results did not support her ability to perform a task at a competitive level"), with Tr. 604 (Mr. Glover indicating that Ms. Catt can perform tasks involving manual dexterity "constantly" throughout an

15 - OPINION & ORDER

eight hour workday).  While not dispositive, portions of Ms. Wright's report also appear to be based on Ms. Catt's uncredible statements.  See, e.g., Tr. 249, 251 (Ms. Wright documenting Ms. Catt's subjective symptom statements about how pain and fatigue allegedly negatively affected her performance, and eventually finding that this pain and fatigue would be a significant bar to employment).  For these reasons, the ALJ did not commit harmful, reversible error in failing to assess Ms. Wright's evaluation.

### B.    Acceptable Medical Source Evidence

There are three types of medical opinions in social security cases: those from treating, examining, and non-examining doctors.  Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995).  In considering medical evidence, "a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's."  Holohan v. Massanari, 246 F.3d 1195, 1202 (9th Cir.2001).  To reject the uncontroverted opinion of a treating or examining doctor, the ALJ must present clear and convincing reasons for doing so.  Bayliss v. Barnhart, 427 F.3d 1211, 1216 (9th Cir. 2005) (citing Lester, 81 F.3d at 830-31).  If a treating or examining doctor's opinion is contradicted by another doctor's opinion, it may be rejected by specific and legitimate reasons.  Id.

In February 2010, Ms. Catt initiated care with Dr. Tyler in order to obtain a second opinion regarding treatment for a possible thyroid condition.  Tr. 581-582.  Over the following year, she saw Dr. Tyler infrequently and only for transitory conditions.  Tr. 584.  In February 2011, Ms. Catt returned to Dr. Tyler and requested that he prescribe pain medications because, as discussed above, Dr. Gullo had recently discharged her for noncompliance; Dr. Tyler agreed to administer such medications provided that she sign a pain management contract.  Tr. 564, 586. Thereafter, Dr. Tyler's treatment consisted primarily of refilling Ms. Catt's prescription

medications. Tr. 584-87. As such, Dr. Tyler never offered an opinion about Ms. Catt's physical or mental functioning. See Tr. 556-67, 581-92.

Thus, the ALJ discussed evidence from Dr. Tyler in his decision but did not afford any particular weight thereto. Tr. 29; see also Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 601 (9th Cir. 1999) (ALJ need not a give any weight to medical report that does "not show how [a claimant's] symptoms translate into specific functional deficits which preclude work activity"); Meanel v. Apfel, 172 F.3d 1111, 1114 (9th Cir. 1999) (affirming the ALJ's rejection of a medical opinion that failed to explain the extent or significance of a condition). Ms. Catt argues, however, that the ALJ's failure to do so was erroneous because "Dr. Tyler, having assumed primary care, ordered [Mr.] Glover's report and concurred with it." Pl.'s Opening Br. 18 (citing Tr. 598).

Initially, as discussed above, the ALJ provided legally sufficient reasons for discrediting portions of Mr. Glover's opinion. Further, contrary to Ms. Catt's assertion, the fact that Dr. Tyler wrote "[e]xam ordered by me" and added his signature to the bottom of Mr. Glover's assessment does not qualify as a concurrence. Tr. 598; see also Cruise v. Astrue, 2012 WL 5037257, *5-6 (D.Or. Sept. 28), adopted by 2012 WL 4966462 (D.Or. Oct. 17, 2012) (nurse practitioner's functional assessment was not attributable to an acceptable medical source simply because a supervising doctor "added his signature to the bottom of [that] assessment") (citations omitted). Although the record reflects that Dr. Tyler arranged for Mr. Glover's assessment at Ms. Catt's request, there is absolutely no indication that Mr. Glover consulted with Dr. Tyler regarding Ms. Catt's treatment or functional abilities, or was otherwise working as Dr. Tyler's agent. Tr. 584-85; Taylor v. Comm'r of Soc. Sec. Admin., 659 F .3d 1228, 1234 (9th Cir. 2011) (lay opinion "is to be considered that of an 'acceptable medical source'" only where that other

source "was working closely with, and under the supervision of [a physician]") (citing <u>Gomez v.</u> <u>Chater</u>, 74 F.3d 967, 971 (9th Cir.), <u>cert. denied</u>, 519 U.S. 881 (1996)).

Moreover, other evidence of record indicates that Dr. Tyler did not endorse Ms. Catt's DIB claim.  While there are no records from Dr. Tyler that post-date Mr. Glover's evaluation, the doctor did state that he was "reluctant to get involved with helping [someone with] fibromyalgia get disability" and, in fact, expressly declined to "support her claim for disability" based on Ms. Wright's report.  Tr. 564, 585.  In sum, Dr. Tyler did not adopt the functional restrictions outlined Mr. Glover's report as his own, such that, as the ALJ found, there is no evidence from Dr. Tyler inhering to Ms. Catt's ability to work.  Therefore, the ALJ did not err in in evaluating evidence from Dr. Tyler, Mr. Glover, or Ms. Wright.

## III.    The ALJ's RFC Assessment and Step Five Finding

Lastly, Ms. Catt contends that the ALJ's RFC and, by extension, the hypothetical questions posed to the VE were erroneous because they did not incorporate all of limitations outlined in her testimony, as well as in the reports of Dr. Tyler, Ms. Wright, and Mr. Glover.

The RFC is the most a claimant can do despite her limitations.  20 C.F.R. § 404.1545(a)(1).  In assessing the RFC, the ALJ must consider limitations imposed by all of a claimant's impairments, even those that are not severe; the ALJ must also evaluate "all of the relevant medical and other evidence."  SSR 96-8p, <u>available at</u> 1996 WL 374184; 20 C.F.R. § 404.1545(a).  However, the ALJ's RFC must only incorporate limitations supported by substantial evidence in the record.  <u>See</u> <u>Osenbrock v. Apfel</u>, 240 F.3d 1157, 1164-65 (9th Cir. 2001).

Here, as discussed above, the statements of Ms. Catt were properly discredited by the ALJ.  Additionally, the ALJ did not err in evaluating the reports of Dr. Tyler, Mr. Glover, or Ms. Wright.  In other words, the ALJ's determination that Ms. Catt retains the ability to perform a

limited range of light work is rational and therefore may not be disturbed. <u>Batson</u>, 359 F.3d at 1198.  Accordingly, plaintiff's argument, which is contingent upon a finding of harmful error in regard to the aforementioned issues, is without merit.  <u>Stubbs-Danielson v. Astrue</u>, 539 F.3d 1169, 1173-76 (9th Cir. 2008); <u>see also</u> <u>Bayliss</u>, 427 F.3d at 1217-18 (ALJ could rely on VE's testimony, even though hypothetical presented to VE did not include all of the claimant's alleged limitations, where hypothetical contained restrictions that the ALJ found credible and supported by substantial evidence).

## CONCLUSION

The Commissioner's decision is AFFIRMED because it was supported by substantial evidence in the record and based on the correct legal standards.  This action is DISMISSED.

IT IS SO ORDERED.

DATED this 8 day of ~~December, 2013.~~ Jan. 2014

Marco A. Hernandez
United States District Judge